1
2
3
4
5
6
7
8
9
10
11
12          **IN THE UNITED STATES DISTRICT COURT**
13          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
14
15   ARON MARGOSIAN, et al.,                    CASE NO. CV F 11-0137 LJO SMS
16              Plaintiffs,                     **ORDER ON SCHOENBURG DEFENDANTS'**
                                                **F.R.Civ.P. 12 MOTION TO DISMISS**
17        vs.                                   (Doc. 7.)
18   DALE MARGOSIAN, et al.,
19              Defendants.
     _____/
20
21                            **INTRODUCTION**
22          Defendants Loren Schoenburg ("Mr. Schoenburg") and Marge Schoenburg ("Mrs. Schoenburg")
23   seek to dismiss plaintiff Aron Margosian ("Mr. Margosian") and Carrie Margosian's ("Mrs.
24   Margosian's") fraud and related tort claims as insufficiently plead.  Mr. and Mrs. Margosian (collectively
25   "plaintiffs") filed no timely opposition papers.  This Court considered Mr. and Mrs. Schoenburg's
26   F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 2, 2011 hearing, pursuant
27   to Local Rule 230(c), (g).  For the reasons discussed below, this Court DISMISSES the claims against
28   Mr. and Mrs. Schoenburg.

                                           1

# BACKGROUND[1]

## Summary

Since 1995, Mr. Margosian and Martin Zaninovich ("Mr. Zaninovich")[2] have been associated in several agricultural business entities. The 43-page complaint names as defendants nine individuals, including accountants, a lawyer and two bankers, a bank, and another business entity (collectively "defendants"). The complaint's gist is that defendants assisted Mr. Zaninovich to defraud Mr. Margosian of thousands of dollars through Mr. Zaninovich's "schemes" to render Mr. Margosian's "financial well being in tatters."

Mr. and Mrs. Schoenburg held ownership interests in Z&S with Mr. Zaninovich. The complaint identifies Z&S as Mr. Zaninovich's "company."

## Early Farming Operations

After finishing high school, Mr. Margosian started to work on his Margosian Brothers family farm. In 1995, Mr. Margosian hired Mr. Zaninovich to sell Margosian Brothers produce. Beginning in 1998, Mr. Margosian and Mr. Zaninovich purchased and operated agricultural lots as Two Play Farms. In 2001, Mr. Margosian, Mr. Zaninovich and two others purchased a parcel and operated it as Three Play Farms. Mr. Margosian managed day-to-day growing and harvesting operations. Mr. Zaninovich addressed "business aspects of [the] partnership." Mr. Margosian and Mr. Zaninovich agreed that proceeds would be split equally between owner grower accounts and that the money in Mr. Margosian's account would be saved to purchase additional acreage. In 2006, at Mr. Zaninovich's suggestion, Two Play Farms was converted to a limited liability company.

## Mr. Zaninovich's Schemes

Mr. Zaninovich commonly commingled various business venture funds and frequently withdrew large sums from business accounts in which Mr. Margosian held an equal ownership interest.

In 2006, Mr. Zaninovich agreed with Scott and James Critchley (the "Critchley Brothers") to

---

[1]    The factual recitation is derived generally from plaintiffs' complaint ("complaint"), filed June 30, 2010 in Tulare County Superior Court prior to removal to this Court. The factual recitation will focus on allegations addressing Mr. and Mrs. Schoenburg.

[2]    Although the complaint makes sporadic references to Mr. Zaninovich as "defendant," the complaint's general allegations do not identify him as a defendant, and his name does not appear in the complaint's caption.

1  become part of an established packing house.  Mr. Margosian understood that Mr. Zaninovich used two

2  Z&S Peterbilt trucks to make the acquisition.  Mr. Margosian did not know that Mr. Zaninovich used

3  $150,000 of Two Play's line of credit to make the acquisition.

4  Mr. Zaninovich arranged for loans for the various business entities in which he had an interest.

5  Mr. Zaninovich told Mr. Margosian that new loan documents were to lower the interest rates on Mr.

6  Zaninovich's existing loans and that Mr. Margosian's signature was needed because Two Play was the

7  leaseholder to Z&S and that Mr. Margosian's permission was required to swap the loan interest.

8  Mr. Margosian and Mr. Zaninovich were partners in Two Play Arizona which purchased a cold

9  storage in Nogales, Arizona.  Mr. Zaninovich told Mr. Margosian that in 10 years, the cold storage

10 would be paid off and that Mr. Margosian would receive $125,000 per year in rent from Z&S.

11 In early 2009, Mr. Margosian discovered that he "had entered into these ventures" with Mr. and

12 Mrs. Schoenburg.

13 In July 2009, Mr. Zaninovich sold Two Play Arizona cold storage to decrease his and Z&S' debts

14 and loans.  Mr. Margosian believed the sale would benefit Two Play because $800,000 was owed and

15 the sale was $1.5 million.  Mr. Zaninovich told Mr. Margosian that the sale would reduce "our debts"

16 which Mr. Margosian understood to be Two Play's debts, not those of Z&S in which Mr. Margosian had

17 no interest.  Mr. Margosian signed the sale documents waiving rent collection on the cold storage

18 because Mr. Zaninovich represented that Two Play's debts would decrease.

19 In 2009, Mr. Margosian received conflicting information as to his grower accounts and

20 discovered that PACA grower account monies were misappropriated though Z&S, whose officers

21 include Mr. and Mrs. Schoenburg.

22 **Plaintiffs' Claims**

23 The complaint, as discussed below, alleges against Mr. and Mrs. Schoenburg and the other

24 defendants claims of negligent misrepresentation, intentional misrepresentation, fraud – intentional

25 concealment/suppression of fact, constructive fraud, conspiracy, RICO, 18 U.S.C. § 1962 – aiding and

26 abetting, breach of fiduciary duty, and negligent and intentional infliction of emotional distress.

27 / / /

28 / / /

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

Mr. and Mrs. Schoenburg attack the fraud claims as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b) and the remaining claims as lacking facts to support necessary elements.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

4

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

1   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

2       With these standards in mind, this Court turns to Mr. and Mrs. Schoenburg's challenges to

3   plaintiffs' claims.

4                   **F.R.Civ.P. 9(b) Particularity Pleading Standards**

5       The thrust of Mr. and Mrs. Schoenburg's challenges is the complaint's failure to satisfy

6   F.R.Civ.P. 9(b), which requires a party to "state with particularity the circumstances constituting fraud."[3]

7   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

8   particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

9   Cal. 2003); *see Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 404 F.Supp.2d 1214, 1219

10  (E.D. Cal. 2005) ("misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s

11  particularity requirement").  The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to

12  claims under the Racketeer and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  *Moore v.*

13  *Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Prods., Inc. v. Albright*,

14  862 F.2d 1388, 1392-93  (9th Cir. 1988).

15      A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

16  9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[4]  A motion to dismiss a claim

17  "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional

18  equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at

19  1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of

20  the claim showing that the pleader is entitled to relief."

21      F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

22  requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

23  _____

24      [3]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
    will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
25  Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*
    *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
26  1995)(italics in original)).

27      [4]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that
    course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and
28  the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).  The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir.1991) (F.R.Civ.P. 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme"); *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982) (plaintiff must describe the "time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby").

Mr. and Mrs. Schoenburg argue that the complaint's general allegations fail to satisfy F.R.Civ.P. 9(b) in that they merely identify Mr. and Mrs. Schoenburg as holding an ownership interest in Z&S with

1   Mr. Zaninovich and as Z&S officers.  Mr. and Mrs. Schoenburg note that the complaint's general

2   allegations fail to attribute to Mr. and Mrs. Schoenburg alleged wrongdoing, such as misrepresentations

3   or concealing facts.  Mr. and Mrs. Schoenburg go further to argue that "there are no specific allegations

4   at all in the Complaint explaining the Schoenburg's alleged role in any misrepresentation."

5           Mr. and Mrs. Schoenburg are correct that the complaint's general allegations "are completely

6   devoid of any of the specific circumstances constituting any alleged specific fraud."  In the absence of

7   fraud sufficiently alleged in the complaint's general allegations, this Court turns to whether the

8   individual fraud claims are alleged with sufficient particularity.

9                               **Negligent Misrepresentation**

10          The complaint's second claim proceeds under a negligent misrepresentation theory.  For

11  negligent misrepresentation, a plaintiff must establish "misrepresentation of a past or existing material

12  fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance

13  on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by

14  the party to whom it was directed; and resulting damage." *Hydro-Mill Co., Inc. v. Hayward, Tilton and*

15  *Rolapp Ins. Associates, Inc.*, 115 Cal.App.4th 1145, 1154, 10 Cal.Rptr.3d 582 (2004).

16          Mr. and Mrs. Schoenburg contend that the negligent misrepresentation claim fails to attribute

17  to them misrepresentations and to identify the circumstances constituting fraud against them.

18          The negligent misrepresentation claim addresses Mr. Zaninovich's loans for which "Z&S would

19  be responsible" and failure to file taxes for Z&S.  The claim alleges that Mr. Zaninovich "was moving

20  money around from one corporation to another just to keep the appearance that all was well."  The claim

21  further alleges that an unidentified "Defendant made these representations with the intent to induce

22  Plaintiffs, to act in reliance on the representations and to be influenced in the loan signings herein

23  alleged, which Defendant intended to influence, in that Defendant knew with substantial certainty that

24  Plaintiffs would rely on the representations in the course of the transactions."  The claim concludes that

25  as a result of "Defendants' fraud and deceit," plaintiffs were induced to sign loan documents that

26  obligated them.

27          The negligent misrepresentation claim lacks specific allegations as to Mr. and Mrs. Schoenburg.

28  The claim identifies no representation made by Mr. and Mrs. Schoenburg, let alone a misrepresentation.

1    The claim makes references to Z&S but nothing to support a negligent misrepresentation claim even as

2    to it.   The claim fails to allege facts to support Mr. and Mrs. Schoenburg's alleged negligent

3    misrepresentation.

4                              **Intentional Misrepresentation**

5          The complaint's third claim proceeds under an intentional misrepresentation theory.   The

6    elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or

7    nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance;

8    (4) justifiable reliance; and (5) resulting damage.   *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49

9    Cal.Rptr.2d 377 (1996).[5]

10         "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

11   specifically, all of the elements of the cause of action."   *Conrad v. Bank of America*, 45 Cal.App.4th 133,

12   156, 53 Cal.Rptr.2d 336 (1996).   There must be a showing "that the defendant thereby intended to induce

13   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

14   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

15   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.   "The absence of any one of these required elements

16   will preclude recovery."   *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

17   Cal.Rptr. 355 (1986).

18         The intentional misrepresentation claim alleges on information and belief that "Defendants, who

19   made the representations herein alleged, are agents of Zaninovich."   The claim further alleges: "When

20   Defendants . . . made these representations, they knew them to be false and made these representations

21   with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these

22   representations in the manner herein alleged, or with the expectation that Plaintiffs would so act."   The

23   claim continues that "Plaintiffs was [sic] induced to and did invest money and sign loan documents as

24   instructed by Defendants."   The claim alleges that in reliance on representations of "Defendants,"

25   "Plaintiffs were induced to and did continue to invest money in the business, not knowing that

26   Zaninovich would immediately withdraw money for himself instead of utilizing the money for the

27

28         [5]      The same elements comprise a cause of action for negligent misrepresentation, except there is no
     requirement of intent to induce reliance.   *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004).

1    business entities in which Plaintiffs held an interest." The claim attributes "false representations" to

2    defendants other than Mr. and Mrs. Schoenburg.

3         Mr. and Mrs. Schoenburg are correct that the intentional misrepresentation claim fails to identify

4    a representation made by them.  Mr. and Mrs. Schoenburg are further correct that the claim pleads

5    "vague and conclusory allegations without information as to the who, what, when, where, and how of

6    the intentional misrepresentations." The claim lacks specific allegations as to Mr. and Mrs. Schoenburg.

7    The claim does not reference Z&S, the business in which Mr. and Mrs. Schoenburg hold an interest.

8    The claim fails to allege facts to support Mr. and Mrs. Schoenburg's alleged intentional

9    misrepresentation.

10                                **Concealment**

11        The complaint's fourth claim is entitled "Fraud – Intentional Concealment/Suppression of Fact."

12   Concealment is a species of fraud or deceit.  *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*

13   162 Cal.App.4th 858, 868, 76 Cal.Rptr.3d 325 (2008); *see* Cal. Civ. Code, §§ 1710(3), 1572(3); *Lovejoy*

14   *v. AT & T Corp.,* 119 Cal.App.4th 151, 158, 14 Cal.Rptr.3d 117 (2004.  "[T]he elements of an action

15   for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a

16   material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the

17   defendant must have intentionally concealed or suppressed the fact with the intent to defraud the

18   plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he

19   had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of

20   the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,*

21   6 Cal.App.4th 603, 612-613, 7 Cal.Rptr.2d 859 (1992); *Lovejoy*, 119 Cal.App.4th at 157-158, 14

22   Cal.Rptr.3d 117.

23        The concealment claim alleges:

24        . . . Defendants suppressed facts about Zaninovich's financial dealings, management, and
          financial stability, representing to Plaintiffs that their investments were safe and sound,
25        but failed to reveal and suppressed the facts that Zaninovich was draining money from
          any account he could get his hands on and obtaining loans with falsified financial
26        documents that Defendants . . . helped to create and/or knew of the falsity, yet they
          represented to Plaintiffs were true and accurate accountings.

27

28        Mr. and Mrs. Schoenburg fault the concealment claim's failure to "plead with the requisite

                                         10

1   particularity the name of the defendant who concealed material facts" and "the circumstances
2   constituting the alleged fraudulent concealment."

3       Mr. and Mrs. Schoenburg are correct.  The concealment claim fails to identify who allegedly
4   concealed material facts.  The complaint lacks facts that Mr. and Mrs. Schoenburg owed a duty to
5   disclose the alleged concealed material facts.  The claim lacks specific allegations as to Mr. and Mrs.
6   Schoenburg.  The claim fails to allege facts to support Mr. and Mrs. Schoenburg's alleged concealment.

7                                              **Constructive Fraud**

8       The complaint's fifth claim proceeds on a constructive fraud theory.  In *Salahutdin v. Valley of*
9   *California, Inc.,* 24 Cal.App.4th 555, 562, 29 Cal.Rptr.2d 463 (1994), the California Court of Appeal
10  explained constructive fraud:

11          Constructive fraud is a unique species of fraud applicable only to a fiduciary or
            confidential relationship. . . . [A]s a general principle constructive fraud comprises any
12          act, omission or concealment involving a breach of legal or equitable duty, trust or
            confidence which results in damage to another even though the conduct is not otherwise
13          fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive
            fraud. The failure of the fiduciary to disclose a material fact to his principal which might
14          affect the fiduciary's motives or the principal's decision, which is known (or should be
            known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement
15          may constitute constructive fraud even though there is no fraudulent intent. (Citation and
            internal punctuation omitted).
16

17      The constructive fraud claim alleges that "Defendants" owed plaintiffs a fiduciary duty and
18  abused plaintiffs' trust and confidence by "failing to disclose to Plaintiffs that their money was being
19  wrongfully withdrawn from various accounts by Zaninovich for his personal use rather than for the
20  authorized purposes connected with Plaintiffs' business and investments."  The claim further alleges that
21  "Defendants" obtained funds from plaintiffs' bank account for defendants' use, "removed Plaintiffs [sic]
22  name from bank accounts; transferred Plaintiffs funds without authorization; prepared false financial
23  statements and waived necessary financial statements and accountings, and prepared financial statements
24  for Plaintiffs showing that their money was in correct grower accounts when in fact Defendants knew
25  the money was gone."

26      Mr. and Mrs. Schoenburg are correct that the constructive fraud claim fails to identify their
27  fraudulent conduct and "the role of each defendant in the alleged fraudulent scheme."  The complaint
28  identifies no act, omission or concealment involving a breach of legal or equitable duty, trust or

                                                   11

1   confidence attributable to Mr. and Mrs. Schoenburg.  The complaint merely references Mr. and Mrs.

2   Schoenburg's interest in Z&S, which is far from sufficient to constitute a fiduciary or similar

3   relationship of trust and confidence.  The complaint lacks a viable constructive fraud claim against Mr.

4   and Mrs. Schoenburg.

5                                          **Conspiracy**

6          The complaint's sixth claim is entitled "Conspiracy."  The conspiracy claim alleges that during

7   2003-2009, "Defendants" conspired "to conceal true accountings from Plaintiffs, and to take money

8   from Plaintiffs, and deprive Plaintiffs of money and property to which Plaintiffs were entitled, and which

9   Defendants . . . entrusted to care for and manage."  The claim further alleges that "Defendants"

10  "conspired to conceal the mismanagement of funds and loans" and "furthered the conspiracy by

11  preparing false financial statements," "concealing financial information," "misrepresenting loan terms,"

12  and "refusing Plaintiffs' requests for financial information."  The complaint accuses "Defendants" of

13  cooperating with Mr. Zaninovich to further the conspiracy.

14         "[C]ivil conspiracy is not an independent tort."  *Kidron v. Movie Acquisition Corp.*, 40

15  Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995).  "Conspiracy is not a cause of action, but a legal

16  doctrine that imposes liability on persons who, although not actually committing a tort themselves, share

17  with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equipment Corp.*

18  *v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475 (1994) (citing *Wyatt v. Union*

19  *Mortgage Co.,* 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598 P.2d 45 (1979)).  "Standing alone, a

20  conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an

21  actual tort."  *Applied Equipment*, 7 Cal.4th at 511, 28 Cal.Rptr.2d 475.  "The essence of the claim is that

22  it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability."

23  *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823, 32 Cal.Rptr.3d

24  325 (2005).

25         The civil conspiracy elements are: "(1) the formation and operation of the conspiracy, (2)

26  wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."

27  *Kidron*, 40 Cal.App.4th at 1582, 47 Cal.Rptr.2d 752.  "The conspiring defendants must also have actual

28  knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful

                                                  12

1   purpose." *Kidron*, 40 Cal.App.4th at 1581, 47 Cal.Rptr.2d 752; *see Wyatt v. Union Mortgage Co.,* 24

2   Cal.3d 773, 784-786, 157 Cal.Rptr. 392 (1979) ("a plaintiff is entitled to damages from those defendants

3   who concurred in the tortious scheme with knowledge of its unlawful purpose"); *People v. Austin*, 23

4   Cal.App.4th 1596, 1607, 28 Cal.Rptr.2d 885 (1994) ("without knowledge of the illegal purpose there

5   is no basis for inferring an agreement").  "The effect of charging . . . conspiratorial conduct is to

6   implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out.

7   *Black v. Sullivan,* 48 Cal.App.3d 557, 566, 122 Cal.Rptr. 119 (1975).

8        The conspiracy claim against Mr. and Mrs. Schoenburg fails in the absence of facts that they

9   engaged in wrongful conduct to support conspiracy elements.  Of key importance, the complaint lacks

10  allegations of facts of wrongful conduct attributable to Mr. and Mrs. Schoenburg directly or through

11  their concurrence in a tortious scheme with knowledge of its unlawful purpose.  The complaint fails to

12  allege facts of Mr. and Mrs. Schoenburg's agreement between themselves or with others to plan to

13  commit wrongs along with actual commission of an actionable tort.  The mere alleged interest in Z&S

14  is insufficient to support a conspiracy.  As such, the conspiracy claim against Mr. and Mrs. Schoenburg

15  is subject to dismissal.

16                              **RICO Aiding And Abetting**

17       The complaint's seventh claim proceeds under an aiding and abetting theory pursuant to the

18  Racketeer and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 ("section 1962").  The claim

19  alleges on information and belief that "Defendants" "are responsible for aiding and abetting liability

20  based on Defendants' . . . knowledge that their co-Defendants' behaviors constituted a breach of duty."

21  The claim further alleges that "Defendants" engaged in fraud "to defraud Plaintiffs of their property, and

22  in doing so, requested several different loans, prepared false financial statements, and participated in

23  falsifying tax returns, all to defraud Plaintiffs and growers out of their money and property."  The claims

24  accuses "Defendants" of assisting "co-Defendants in depriving Plaintiffs of their money and property

25  in California so that the money could be used for the Arizona cold storage which was sold without

26  paying Plaintiffs the lease rate which was promised."

27       Mr. and Mrs. Schoenburg fault the complaint's failure to identify their conduct subject to RICO.

28  The Ninth Circuit applies F.R.Civ.P. 9(b) particularity standards to RICO claims.  *See Alan Neuman*

1   *Productions, Inc. v. Albright,* 862 F.2d 1388, 1392-1393 (9th Cir. 1988) ("The allegations of predicate

2   acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place,

3   or nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b),

4   which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib.*

5   *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b)

6   to mean that the pleader must state the time, place, and specific content of the false representations as

7   well as the identities of the parties to the misrepresentation.")

8        The RICO claim fails to identify particular activities prohibited under RICO. The complaint fails

9   to identify particular conduct attributable to Mr. and Mrs. Schoenburg or to allege facts to subject them

10  to section 1962 liability. The claim is unclear as to Mr. and Mrs. Schoenburg's alleged RICO liability

11  and does not come close to satisfying F.R.Civ.P. 9(b) to warrant its dismissal.

12                               **Breach Of Fiduciary Duty**

13       The complaint's eighth claim alleges that "Defendants" "owed to Plaintiffs a fiduciary duty to

14  make the fullest disclosure of all material facts that might affect Plaintiff's interest in the business

15  entities as herein above alleged." The claim further alleges that "Defendants" "breached their fiduciary

16  duties as Plaintiffs' agents" when defendants engaged in acts alleged in various paragraphs.

17       Mr. and Mrs. Schoenburg fault the complaint's failure to allege a duty owed by them let alone

18  a fiduciary duty.

19       "[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of

20  a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any

21  one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3

22  Cal.Rptr.2d 236 (1991).

23       A fiduciary relationship arises "between parties to a transaction wherein one of the parties is .

24  . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v.*

25  *Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937). A fiduciary relationship "ordinarily arises where

26  a confidence is reposed by one person in the integrity of another, and in such a relation the party in

27  whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take

28  no advantage from his acts relating to the interest of the other party without the latter's knowledge or

                                           14

1    consent."  *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

2        Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust

3    and confidence in each other.'"  *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26

4    Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies,*

5    *Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)).  To be charged with a fiduciary obligation,

6    a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a

7    relationship which imposes that undertaking as a matter of law.  *City of Hope Nat. Medical Center v.*

8    *Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).  "California courts have not extended the

9    'special relationship' doctrine to include ordinary commercial contractual relationships"  *Martin v.*

10   *U-Haul Co. Of Fresno*, 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted).

11       Mr. and Mrs. Schoenburg note that the complaint only alleges that they are officers of and hold

12   an interest in Z&S.  Mr. and Mrs. Schoenburg contend that such limited allegation is insufficient to arise

13   to a fiduciary relationship with plaintiffs.

14       The complaint alleges no facts to support a fiduciary relationship between Mr. and Mrs.

15   Schoenburg and plaintiffs.  The complaint appears to lump Mr. and Mrs. Schoenburg with other who

16   may owe fiduciary duties.  The breach of fiduciary duty claim fails as to Mr. and Mrs. Schoenburg.

17                   **Intentional Infliction Of Emotional Distress**

18       The complaint's (ninth) intentional infliction of emotional distress ("IIED") claim alleges that

19   "Defendants . . . falsified financial documents and waived necessary financials, and falsified tax returns

20   all in an elaborate scheme to defraud Plaintiffs of their life savings, and additionally, to deprive [Mr.

21   Margosian] of his home and ranches."

22       Mr. and Mrs. Schoenburg challenge the complaint's failure to allege IIED elements, especially

23   given the absence of allegations that they "had any role or participated in any fraudulent conduct other

24   than being officers of Z&S Corporation."

25       The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention

26   to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering

27   severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious

28   (outrageous) conduct and the emotional distress.  *Nally v. Grace Community Church of the Valley*, 47

                                        15

1  Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989); *Cole*

2  *v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).  The "[c]onduct

3  to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized

4  community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting

5  *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and

6  outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.

7  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

8  trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857

9  (1989).

10       To support an intentional infliction of emotional distress claim, the conduct must be more than

11  "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a

12  plaintiff of whom the defendant is aware."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2

13  Cal.Rptr.2d 79 (1991).  The California Supreme Court has further explained:

14       "The law limits claims of intentional infliction of emotional distress to egregious conduct
         toward plaintiff proximately caused by defendant." . . . The only exception to this rule

15       is that recognized when the defendant is aware, but acts with reckless disregard, of the
         plaintiff and the probability that his or her conduct will cause severe emotional distress

16       to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of
         recovery, the presence of the plaintiff at the time the outrageous conduct occurs is

17       recognized as the element establishing a higher degree of culpability which, in turn,
         justifies recovery of greater damages by a broader group of plaintiffs than allowed on a

18       negligent infliction of emotional distress theory. . . .

19  *Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

20       The complaint lacks allegations of Mr. and Mrs. Schoenburg's outrageous conduct commited

21  with their intention to cause, or reckless disregard of the probability of causing, emotional distress.  The

22  complaint focuses only on their limited ownership and officer roles in Z&S.  The complaint alleges

23  nothing remote to satisfy IIED elements as to Mr. and Mrs. Schoenburg.

24                           **Negligent Infliction Of Emotional Distress**

25       Like the IIED claim, the complaint's (tenth) negligent infliction of emotional distress ("NIED")

26  claim alleges that "Defendants . . . falsified financial documents and waived necessary financials, and

27  falsified tax returns all in an elaborate scheme to defraud Plaintiffs of their life savings, and additionally,

28  to deprive [Mr. Margosian] of his home and ranches."

16

1   Mr. and Mr. Schoenburg fault the complaint's absence of facts to support NIED elements in that

2   serving as a corporate officer does not "exceed all bounds of that usually tolerated in a civilized society."

3   Negligent infliction of emotional distress is a form of the tort of negligence, to which the

4   elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores*

5   *California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). California law recognizes that "there

6   is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a

7   cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire &*

8   *Rubber Co.*, 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550 (1993). The existence of a duty is a question of law.

9   *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

10   Negligent infliction of emotional distress includes "at least two variants of the theory" –

11   "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037, 71

12   Cal.Rptr.2d 891, 892 (1998). "The distinction between the 'bystander' and the 'direct victim' cases is

13   found in the source of the duty owed by the defendant to the plaintiff." *Burgess v. Superior Court*, 2

14   Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992). "Bystander" claims are typically based on breach of a

15   duty owed to the public in general (*Christensen v. Superior Court*, 54 Cal.3d 868, 884, 2 Cal.Rptr.2d

16   79 (1991)), whereas a right to recover for emotional distress as a "direct victim" arises from the breach

17   of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises

18   out of the defendant's preexisting relationship with the plaintiff (*Burgess*, 2 Cal.4th at 1073-1074, 9

19   Cal.Rptr. 615; *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98). "[B]ystander liability is premised upon

20   defendant's violation of a duty not to negligently cause emotional distress to people who observe

21   conduct which causes harm to another." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr. 615.

22   "'Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but

23   instead witnessed someone else being injured due to defendant's negligence." *Wooden*, 61 Cal.App.4th

24   at 1037, 71 Cal.Rptr.2d at 892. "'Direct victim' cases are cases in which the plaintiff's claim of

25   emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the

26   violation of a duty owed directly to the plaintiff." *Wooden*, 61 Cal.App.4th at 1038, 71 Cal.Rptr.2d at

27   893-894. In "direct victim" cases, "well-settled principles of negligence are invoked to determine

28   whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2

17

Cal.4th at 1073, 9 Cal.Rptr.2d 615. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th at 985, 25 Cal.Rptr.2d 550.

Mr. and Mrs. Schoenburg argue that the complaint fails to attribute an actionable duty to support a NIED claim. Mr. and Mrs. Schoenburg are correct. The complaint supports neither a direct victim nor bystander claim against Mr. and Mrs. Schoenburg. The complaint lacks facts of an actionable duty running from Mr. and Mrs. Schoenburg to plaintiffs. The California Supreme Court has explained limited liability of corporate directors and officers:

> Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. . . . They are not responsible to third persons for negligence amounting merely to nonfeasance, to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person. . . . More must be shown than breach of the officer's duty to his corporation to impose personal liability to a third person upon him."

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 594-595, 83 Cal.Rptr. 418 (1970). Mr. and Mrs. Schoenburg are not liable for wrongs related to Z&S in the absence of their own breaches of duties owed to plaintiffs. The NIED claim fails as to Mr. and Mrs. Schoenburg.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES this action with prejudice against Mr. and Mrs. Schoenburg; and

2. DIRECTS the clerk to enter judgment in favor of defendants Loren Schoenburg and Marge Schoenburg and against plaintiffs Aron Margosian and Carrie Margosian in that there is no just reason to delay to enter such judgment given that plaintiffs' claims against the Mr. and Mrs. Schoenburg and their alleged liability are clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated:      February 18, 2011                    /s/ Lawrence J. O'Neill
                                                UNITED STATES DISTRICT JUDGE